UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Springfield Local School District Board of Education | ) ) ) | CASE NO.: 4:10CV2401 |
| Plaintiff, | ) ) | JUDGE JOHN ADAMS |
| v. | ) ) | **ORDER AND DECISION** |
| Jeffrey B., et al., | ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the Court on Motion by Plaintiff Springfield Local School District Board of Education ("Springfield") for a Temporary Restraining Order. Doc. 1-2. The Court has been advised, has reviewed the parties' motions and supporting documents, has heard argument from the parties, and has reviewed the applicable law. For the reasons that follow, the motion is DENIED.

**I.     Facts**

This matter revolves around the education needs of H.B., the son of Jeffrey and Lorraine B. ("Parents"). On July 13, 2009, Parents filed a request for a due process hearing in front of an impartial hearing officer ("IHO"), asserting that Springfield was not providing their son with a free appropriate public education ("FAPE"). On October 28, 2009, the parties entered into a settlement agreement to resolve the Parents' complaint for due process. On August 17, 2010, Parents filed a second due process request. In that request, Parents alleged a number of claims, including that Springfield had breached the parties settlement agreement and that the individual education plan ("IEP") created by Springfield continues to fail to provide a FAPE to their son.

On October 5, 2010, Springfield sought to stay the hearing scheduled in Parents' second due process complaint. Specifically, Springfield argued to the IHO that the IHO lacked the authority to

find a breach of the parties' settlement agreement. On October 19, 2010, IHO Todd Mazzola denied Springfield's motion to stay. On October 21, 2010, Springfield filed its complaint in the Mahoning County Court of Common Pleas. Parents removed the complaint to this Court on that same day. On October 22, 2010, the parties appeared before the Court and presented argument on the motion for a temporary restraining order. At the conclusion of the hearing, the Court orally denied Springfield's motion. This order will serve to supplement the reasoning provided during the oral hearing in this matter.

## II. Law and Analysis

When determining whether to issue a temporary restraining order or a preliminary injunction, this Court considers the following four factors:

> (1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir.1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir.1995)). This Court must balance the four factors while noting that none should be considered a prerequisite to the grant of injunctive relief. See *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir.1998).

### A. Likelihood of success on the merits

With regard to the temporary restraining order, the Court must examine Springfield's likelihood of success on its declaratory action. In that action, Springfield seeks a determination that the IHO lacks jurisdiction to hear Parents' claim that Springfield breached the settlement agreement. Upon review, the Court finds that the scales do not tip heavily in favor of Springfield on its claim.

There is no question that the parties' settlement agreement and statutory law seem to support Springfield's claim. The parties' agreement provides as follows: "This is a mediated settlement

agreement enforceable in federal court." There is little doubt that this provision is a reference to similar language in the Individuals with Disabilities Education Act ("IDEA"). While it is clear that Congress intended to provide a forum in both state and federal court for parents claiming breach of mediated settlement agreements, it is equally clear that Congress intended for IHO's to have broad authority in resolving matters in this highly specialized area of law. 34 C.F.R. § 300.507(a)(1) allows a parent to file a due process complaint on any matter related to "the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child." In that regard, it is undeniable that any breach of the settlement agreement is inextricably intertwined with the core decisions made by an IHO. In other words, any resolution of Parents' claim of breach of contract will necessarily involve a review of whether Springfield is providing FAPE to their son.

In addition to the overlap of the breach of contract issues with the core decision-making function of the IHO, there is also present in this matter the issue of *Younger* abstention. While Springfield has not had the opportunity to brief the matter of abstention, there is at least an arguable basis for asserting that this Court should not interfere with an *ongoing* state administrative proceeding.

Finally, the Court notes the unique nature of the settlement agreement at issue. Rather than a mediated settlement agreement that contained the child's IEP, the parties' agreement reflected an agreement to collaborate to later form an IEP. On this basis, Springfield argues that any reliance on *Chardon Local School Dist. Bd. of Educ. V. A.D.*, 2006 WL 840368 (N.D.Ohio Mar 28, 2006) is misplaced. Springfield is correct that in *Chardon*, "the Mediation Agreement, by mutual consent of the parties, was affixed to the individualized educational program of A.D., and, thus, became a part of her educational record." *Id.* at *4. However, there is little doubt that such a practice could not occur here precisely because of the severity of the disabilities at issue. If this Court were to accept Springfield's argument, Parents would lose their right to pursue a due process claim by virtue of the

fact that their son has significantly more severe disabilities than an average special needs child. At this preliminary stage of the proceedings, the Court cannot adopt such an approach.

### B. Irreparable injury

Springfield has presented no evidence of irreparable harm. In its argument, Springfield claims that it may never be made whole if the breach of the settlement agreement is heard by an IHO. Springfield's assertions, however, ignore the procedures put in place by the IDEA and the state of Ohio.

> Pursuant to the IDEA and parallel Ohio law, Ohio Revised Code Section 3323.05(F), "any party who had a due process hearing before an IHO regarding the identification, evaluation or educational placement of a disabled child and appeals the IHO's ruling to an SLRO, may appeal 'the final order [of the SLRO] within forty-five days of notification of the order to the court of common pleas of the county in which the child's school district of residence is located'" or to the federal district court of competent jurisdiction. *Cleveland Heights-University Heights City School District v. Boss*, 144 F.3d 391, 396 n.3 (6th Cir. 1998).

*Chardon*, at *2. Accordingly, regardless of whether the hearing proceeds before the IHO, Springfield will ultimately be able to present its arguments to a court of competent jurisdiction.

During the hearing in this matter, Springfield focused upon the cost of possibly unnecessary administrative proceedings. Springfield argued that it was concerned that it would be forced to incur costs throughout the administrative proceedings and that a court could ultimately determine that the IHO lacked jurisdiction to entertain the breach of contract claim. Springfield ignores that Parents face that same risk before this Court. This Court could enjoin the proceedings before the IHO only to later be reversed by a reviewing court. In that event, Parents would have suffered the same form of monetary loss for unnecessary proceedings that Springfield currently fears.

The Court, however, is sympathetic to Springfield's plight. In these economic times, it would no doubt be a hardship to incur additional, possible unnecessary, costs. Those monetary costs, however, cannot be labeled as irreparable harm. *See Basicomputer Corp. v. Scott*, 973 F.2d

507, 511 (6th Cir. 1992) (generally, a plaintiff cannot show irreparable harm if its damages are fully compensable monetarily).

The Court is also mindful of the fact that Defendant KidsLink Neurobehavioral Center, Inc. cannot be joined to the administrative proceeding.  In that regard, Springfield asserts that it cannot form a defense to the breach of contract claim and thus will suffer irreparable harm.  However, nothing prevents Springfield from presenting argument and evidence in support of its defense before the IHO.  The simple fact that the proceedings will not be binding on KidsLink does not affect in any way Springfield's ability to present a defense.  Accordingly, Springfield has failed to present evidence of any *irreparable* harm.

**C.  Substantial harm to others**

There is no indication that granting the TRO will directly cause any harm to others.  However, the Court is mindful that permitting Springfield to halt the administrate process may dissuade future parents from entering into mediated settlement agreements.  If such agreements are treated as foreclosing all future due process pleadings, the system will suffer greatly.

**D.  Public interest**

The public has an interest in seeing that the provisions of the IDEA are fulfilled.  As noted above, whether the IHO should be able to entertain the breach of contract claim is an open issue and a close question.  However, whether Parents' son is entitled to FAPE is not an open question.  There can be no doubt that the public has an interest in Parents' child receiving that FAPE as soon as possible.  If this Court were to enjoin the proceedings, any such determination would necessarily be delayed.  This Court's order would be subject to appellate review.  Additionally, the IHO would simultaneously proceed on the remaining due process claims that are pending that are not subject to Springfield's request for a TRO.  Ultimately, the IHO's decision would be subject to multiple levels of review likely ending again in federal district court.  Adding this Court's involvement *prior* to the

administrative proceedings would add an additional layer of proceedings not contemplated by the IDEA and would serve to frustrate the tight deadlines placed on its administrative process.

### III. Conclusion

Springfield's motion for a temporary restraining order is DENIED.  The due process complaint may go forward as scheduled.  Plaintiff is urged to complete service of process in this matter, and Defendants may file responsive pleadings.  All other action in this matter is STAYED pending a decision from the IHO in January of 2011.  The parties shall promptly inform the Court of any such a decision.

A status hearing is hereby scheduled for January 31, 2011 at 10:00 a.m.  All counsel and parties to attend.

IT IS SO ORDERED.


Date: <u>October 25, 2010</u>                         ____/s/ Judge John R. Adams_____
                                                     JUDGE JOHN R. ADAMS
                                                     UNITED STATES DISTRICT COURT